*NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CORRADO PALMERINI | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| JEANETTE BURGOS, ASSISTANT PROSECUTOR OPPENHEIM, MIDDLESEX PROSECUTOR KAPLAN, KELLY POLLACK, SAYREVILLE POLICE DEPARTMENT, ASSISTANT PROSECUTOR MINNION, JOSHUA PEREZ-CORREA, | ) | Civil Action No.: 10-210 (FLW)  **OPINION** |
| Defendants. | ) | |

**WOLFSON, United States District Judge:**

Defendants Jeanette Burgos ("Burgos"), Joshua Perez-Correa ("Perez-Correa"), Middlesex County Assistant Prosecutor Jessica Oppenheim ("Oppenheim"), Middlesex County Assistant Prosecutor Thomas Mannion ("Mannion"), Middlesex County Prosecutor Bruce Kaplan ("Kaplan"), and Middlesex County Prosecutor's Office Investigator Kelly Polack ("Polack") (collectively, "Defendants") move to dismiss the Complaint filed by *pro se* Plaintiff Corrado Palmerini, pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6).[1]  The Complaint alleges, *inter alia*, violations of 42 U.S.C. § 1983; these violations stem from the Middlesex County Prosecutor Office's decision to prosecute Plaintiff for crimes against Plaintiff's ex-fiancé

---

[1] The Complaint incorrectly spells Mannion "Minnion," Perez-Correa "Pereze-Correa," and Polack "Pollack."  Additionally, Kaplan is not listed as a named defendant in the caption of Plaintiff's Complaint, but he is identified as a defendant in the Complaint.  Thus, the Court will consider Kaplan as a named defendant.

1

Burgos, and the subsequent refusal of the Prosecutor's Office to charge Burgos with filing false police reports. For the reasons that follow, the Court dismisses the Complaint against Defendants with prejudice.[2]

## I. BACKGROUND

### A. Factual Background

For the purpose of this Opinion, the facts alleged in the Complaint ("Compl.") are assumed to be true. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). On July 7, 2008, Plaintiff's then-fiancé Burgos reported to a police officer that Plaintiff had punched her in the mouth, slapped her face, and pulled her hair. Compl. at ¶ 2. Plaintiff was arrested by a Newark, New Jersey police officer and charged with simple assault under domestic assault laws. Compl., Ex. A. The police report states that Burgos did not sustain any injuries and refused medical attention. Id. On the same day, Burgos was granted a temporary restraining order against Plaintiff. Compl., Ex. B. On July 31, 2008, the temporary restraining order was dismissed by the Chancery Division – Family Part in Essex County, New Jersey on the basis that Burgos' allegation of domestic violence had not been substantiated. Id.

On August 4, 2008, Burgos reported Plaintiff to the Sayreville Police Department for domestic violence. Compl. at ¶ 3. While it is not clear from the Complaint, it appears that this report was used as the basis for entering a final restraining order against Plaintiff by the Middlesex County Family Court. See id. at ¶¶ 3-4; Compl. at Ex. G. Thereafter, on September 12, 2008, a warrant was issued for Plaintiff's arrest by the Sayreville Police Department after

---

[2] Defendant Sayreville Police Department has not moved for dismissal, or any other relief, of Plaintiff's claims against it. Therefore, those claims against this defendant are unaffected by this Opinion.

2

Burgos claimed that Plaintiff had violated the final restraining order by telephoning her. Compl., Ex. E. It appears Plaintiff was arrested for violating the final restraining order. See id. at ¶¶ 3-4.

Subsequent to that incident, on September 20, 2008, Burgos called the Old Bridge Police Department to report Plaintiff for violating the restraining order after she saw him at a Home Depot in Old Bridge, New Jersey.[3] Compl. at ¶ 5. Burgos claimed that Plaintiff had been "following her around inside the Home Depot for approximately 20 minutes." Compl., Ex. G. As a result of this incident, a warrant was issued for Plaintiff's arrest by the Old Bridge Police Department for violating the final restraining order. Compl. at ¶ 5. Eight days later, on September 28, 2008, Burgos met with an Old Bridge police officer to add additional details to the incident report, including that Plaintiff, while in the Home Depot parking lot, threatened to kill her. Id. at ¶ 7.

Plaintiff's Complaint is again unclear with regard to the next series of events. It appears that at some point during this saga, Perez-Correa, a friend of Burgos, told police that Plaintiff had made terroristic threats against Burgos while he and Plaintiff were talking to each other on the telephone. Id. at ¶ 6. After Plaintiff received notification that the Middlesex County Prosecutor's office planned to use this against him, Plaintiff contacted Perez-Correa. See id. In response, Perez-Correa submitted an undated affidavit to Kaplan, the Middlesex County Prosecutor, in which he recanted statements that he had made to police regarding his phone conversation with Plaintiff. See id. Perez-Correa wrote that after speaking to Burgos he "agreed to tell police that [Plaintiff] had said potentially harmful things about [Burgos]" because making such statements would help Burgos move on from her relationship with Plaintiff. See id. at ¶ 10.

---

[3] Plaintiff's Complaint lists August 20, 2008 as the date of this incident, but the police report is dated September 20, 2008. See Compl., Ex. G. The Court assumes the later date to be accurate.

3

On September 25, 2008, Plaintiff appeared in court to respond to this charge, and possibly others. Compl. at ¶ 6. The prosecution was not persuaded by Perez-Correa's affidavit, and Plaintiff was charged by Oppenheim, a Middlesex County Assistant Prosecutor, with witness tampering and "and yet more bogus charges." Id. As a result, Plaintiff was incarcerated from September 25, 2008 to April 13, 2009, "plus the times [he] was rearrested for violations of restraining [orders], terrorist threats, and stalking." Id. at ¶ 8.

Following his release from incarceration, Plaintiff complained to Old Bridge police officer Detective Michael Cronin ("Cronin") that Burgos had made false statements to the police when reporting the incident that had taken place at Home Depot. Compl. at ¶ 9; Compl., Ex. O. On June 8, 2009, Plaintiff provided Cronin with the video surveillance footage from the Home Depot incident. Compl. at ¶ 9; Compl., Ex. O. After securing a photo of Burgos, Cronin reviewed the footage the next day. Allegedly, Cronin reviewed each video and determined that Burgos' description of the Home Depot incident was false. Id. According to Plaintiff, Cronin concluded that this new information provided probable cause to arrest Burgos for "making two false reports to law enforcement that falsely incriminates another." Id.

On June 10, 2009, Cronin contacted Mannion, another Middlesex County Assistant Prosecutor, to brief him on his investigation of Burgos. Id. In his report, Cronin writes that Mannion agreed with the charges and recommended Cronin sign the complaint. Id. However, on June 11, 2009, Cronin reported that he received phone calls from Mannion and Oppenheim strongly recommending that he not pursue charges against Burgos. Id. On the same day, Cronin's immediate supervisor, Detective Sergeant Daroci, advised Cronin to "close [the] case as per the order of the Middlesex County Prosecutor's Office." Id. Cronin never signed the

complaint against Burgos, and Burgos was never arrested on charges of falsifying two police reports. Id.

On June 19, 2009, Plaintiff wrote to Kaplan, asking that he investigate violations of his civil rights by Burgos and Oppenheim, as well as Polack, an investigator with the Middlesex County Prosecutor's Office.[4]  Compl., Ex. P.  Plaintiff received no response.  Compl. at ¶ 11. Plaintiff also sought the assistance of the New Jersey State Attorney General's office, but by letter dated October 7, 2009, the office concluded that the Middlesex County Prosecutor's Office had not abused its discretion in handling Plaintiff's criminal matters.  Compl., Ex. Q.

**B. Procedural History**

Plaintiff filed the instant Complaint on January 15, 2010, as well an application requesting that he be permitted to proceed without prepaying court fees.  The Complaint seeks a number of remedies, including but not limited to an acknowledgment that his rights were violated, compensation for pain and suffering and financial damages, expungement of his record, payment of all costs for Attorney's fees, "[p]unishment to all persons mentioned and removal of these persons from [o]ffice," dismissal of the restraining orders against him, and restitution in the amount of $25,000,000.  Compl. at pp. 7-8. Furthermore, Plaintiff seeks to have the Court take a series of actions against Defendants:

> #1. Allow [Cronin] to enforce the law by pressing charges against [Burgos] for: (A.) Falsifying two [p]olice reports. (B.) Causing public alarm. (C.) Improperly using (911) phone calls. (D.) Perjury. (E.) Facilitating false statements from [Pereze-Correa] to employ his statements to produce [t]erroristic charges set against me, which later he recanted with an affidavit. (F.) Defamation of Character. (G.) Slander / Libel
>
> # 2. Charge Assistant Prosecutor [Oppenheim] . . . (A.) Obstruction of Justice. (B.) [S]uppression of evidence. (C.) Interfering with a governmental official

---

[4]  Polack is not mentioned in Plaintiff's recap of the events leading up to this case.  Nevertheless as noted infra, Plaintiff "charges" her with various crimes.

> carrying out a lawful function. (D.) Official [m]isconduct, (E.) Violating my [c]ivil [r]ights, (F.) [C]oercing and recruiting Middlesex County Inmate (Gilberto Douglas Hernandez) from a different Pod to write a letter to Ms. Burgos's daughter, trumping up more violations against me, further raising my bail amount, and extending my incarceration.
>
> # 3. Charge Assistant Prosecutor [Mannion] . . . (A.) Aiding and abetting, to collude with [Oppenheim] to obstruct [Cronin] as to follow through with pressing charges against [Burgos] for falsifying two police [r]eports. (B.) Violating my Civil Rights. (C.) Obstruction of Justice. (D.) Interfering with a Governmental Official carrying out lawful function. (E.) Official Misconduct.
>
> # 4.Charge . . . Investigator [Polack] . . . (A.) Tampering with [p]olice [r]eport evidence[,] editing, embellishing Sayreville, N.J. Police report. (B.) Suppression of evidence. (C.) Colluding to recruit inmate (Gilberto Douglas Hernandez) verbal deposition against me, as to [l]eading inmate's (G.D.H.) verbal deposition in regards to story line, and repeatedly correcting (G.D.H.) my name from 'Endado' [t]o Corrado, Inmate (G.D.H.) states, [h]e does not know Bianca Burgos, when in fact states in his letters where Bianca worked, and being their 8th grade school mates. . . . He also mentions about another letter claiming I asked him to write yet the hand writing is not the same as the other letter.
>
> . . .
>
> # 6. Charge [Pereze-Correa] (A.) Perjury. (8.) Falsifying Sayreville N.J. Police Report.

Compl. at pp. 1-2.

On January 19, 2010, the Court denied Plaintiff's application for in forma paupris standing and terminated the case. Upon payment of fees, the case was reopened on February 22, 2010. Thereafter, on August 31, 2010, the Court issued an Order dismissing the Complaint without prejudice on the basis that Plaintiff had violated Local Civil Rule 10.1(a). See August 31, 2010 Order. On October 6, 2010, following a motion by Plaintiff, the case was reopened. Subsequently, three Motions to Dismiss were filed: (1) by Burgos on October 20, 2010; (2) by Perez-Correa on October 20, 2010; and (3) by Mannion, Oppenheim, Polack, and Kaplan (collectively, "Middlesex Defendants") on October 28, 2010. On January 28, 2011, Plaintiff

filed response briefs in opposition against all six parties to the instant dispute. On February 7, 2011, Middlesex Defendants filed a reply brief.

## II. DISCUSSION

### A. Standard of Review Under Rule 12(b)(6)

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'" Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. (quoting Iqbal, 129 S.Ct. at 1953).

**B. Claims Against Burgos and Perez-Correa**

As a preliminary matter, United States district courts do not have the power to "charge" any of the Defendants with a violation of any law, whether federal or, as here, state law. See Williams v. Murdoch, 350 F.2d 840, 841-42 (3d Cir. 1965). As such, many of the requests for relief Plaintiff seeks in his Complaint, as delineated above, are not within this Court's power. In addition, nowhere in Plaintiff's Complaint does he identify any state or federal statutory or

common law basis for his causes of action. Instead, Plaintiff alleges a litany of convoluted facts to show that he is entitled to relief. In arguing for dismissal, Defendants have assumed, and Plaintiff has not disputed, that Plaintiff's action is brought solely under 42 U.S.C. § 1983 for violations of his civil rights. While the Court construes Plaintiff's action to be a Section 1983 claim for federal jurisdiction purposes, it need not construe additional state law claims for Plaintiff. To the extent Plaintiff has any state law claims against Defendants, he may bring them in state court. The Court now turns to claims against Burgos and Perez-Correa.

Burgos and Perez-Correa, who are represented by the same attorney but are seeking dismissal separately, contend that they are entitled to dismissal of Plaintiff's Complaint because it is "procedurally barred and totally without merit." Burgos Mot. to Dismiss at p. 1; Perez-Correa Mot. to Dismiss at p. 1. Plaintiff does not attempt to refute the legal arguments made by these individual defendants, but instead merely recites the facts of the case and argues that he will be able to prove a clear violation of his civil rights. Pl.'s Reply to Burgos at p. 2. However, without establishing, or even alleging, that these defendants are state actors for the purposes of § 1983, Plaintiff's claims against them fail to state a claim.[5]

Section 1983, which affords remedies for certain violations of constitutional rights, provides in relevant part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen

---

[5] Both Burgos and Perez-Correa argue that Plaintiff's claims are also barred by 28 § U.S.C. 1257(a), which precludes any federal court but the Supreme Court from attacking decisions of any state's highest court. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (district courts do not have jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional). Additionally, both parties argue that Plaintiff's Complaint is barred by the doctrines of res judicata and collateral estoppel. Because the Court decides that Burgos and Perez-Correa are not state actors, the Court need not embark on these analyses.

>of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

Thus, a plaintiff seeking relief under § 1983 must allege, first, a violation of a right secured by the Constitution or laws of the United States and, second, an alleged deprivation that was committed or caused by a person acting under color of state law. See Jackson v. Jefferies, No. 08-5704, 2009 WL 321583, *1 (D.N.J. Feb. 4, 2009) (citing West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994)).  Section 1983 "does not reach purely private conduct . . . however discriminatory or wrongful" the conduct may be. District of Columbia v. Carter, 409 U.S. 418, 423-24 (1973); reh'g denied, 410 U.S. 959 (1973) (citing cases).  Thus, the plaintiff alleging a violation under Section 1983 bears the burden of proof on the threshold issue of whether a defendant acted "under color of state law." Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (citing Atkins, 487 U.S. at 48).  The alleged actions must "be fairly attributed to the state itself." See id. at 638-39 (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)).

The Third Circuit has repeatedly rejected cases brought under Section 1983 by plaintiffs that allege state action by private individuals. See, e.g., Harvey v. Plains Tp. Police Dept., 421 F.3d 185, 195-96 (3d Cir. 2005) (despite being accompanied by a police officer, landlord who opened tenant's apartment door was not a "state actor" because she neither acted jointly with the police officer nor participated voluntarily); Benn v. Universal Health System, Inc., 371 F.3d 165, 171-172 (3d Cir. 2004) (mental health professionals at private mental health care facility who applied to have the plaintiff examined to determine if he should be civilly committed were not state actors even though state law permits a "responsible party" to file an application for an

10

emergency examination because defendants were not "willful participants in joint activity with the state or its agents," and also were not controlled by any state agency or performing a function that was traditionally a public one); Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277-278, (3d Cir. 1999) (attorneys are not state actors when they perform their traditional duties solely because they are officers of the court, even when they arguably utilize compulsive powers of the state by issuing subpoenas); Tunstall v. Office of Judicial Support of Court of Common Pleas of Delaware County, 820 F.2d 631, 633-634 (3d Cir. 1987) (private party does not act under color of state law by filing quiet title action to gain possession of property purchased at tax sale). Here, based upon the allegations, Burgos and Perez-Correa were clearly acting as private individuals when they reported Plaintiff to the police for his alleged illegal conduct. Plaintiff has not alleged any facts that would substantiate the claim that Burgos and Perez-Correa were state actors. In fact, Plaintiff has not even alleged state action by either of these individual defendants.

Moreover, even if Burgos or Perez-Correa were state actors, there is no constitutional right implicated by Plaintiff's assertion that false police reports were filed. See Jarrett v. Township of Bensalem, 312 Fed. App'x. 505, 507 (3d Cir. 2009) (citing Bush v. City of Philadelphia, No. 98-0994, 1999 WL 554585, *1 (E.D. Pa. July 16, 1999) (surveying cases and determining that no constitutional right to a correct police report exists)); see also Ellis v. Vergara, No. 09-2839, 2009 WL 4891762, *5 (D.N.J. Dec. 15, 2009) (in an action brought against two police officers, finding that "the preparation of a false police report does not state a claim under § 1983"). Additionally, "a person's false statement to the police or in a criminal proceeding is not, without more, state action under § 1983." Arendas v. Hillsborough Police Dep't., No. 09-5965, 2010 WL 2682163, *4 (D.N.J. July 2, 2010) (citing Briscoe v. LaHue, 460

11

U.S. 325, 329-30 (1983); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Cruz v. Donnelly, 727 F.2d 79, 82 (3d Cir. 1989)).

In sum, Plaintiff has alleged no facts that would establish that Burgos or Perez-Correa are state actors for the purposes of Section 1983, and Plaintiff has failed to allege a constitutional violation by these private individual defendants. If Plaintiff has any viable claims against either individual, he may bring them pursuant to New Jersey state law. See Carey v. First Nat. Bank of Port Allegany, 266 Fed. App'x. 161, 162 (3d Cir. 2008) (citing Baker v. McCollan, 443 U.S. 137, 146 (1979) (tort claims must be pursued in state courts under traditional state law principles and not under § 1983)). Therefore, the Court will grant Burgos and Perez-Correa's motions to dismiss.

**E. Claims Against Middlesex Defendants**

Middlesex Defendants argue that all of Plaintiff's claims are barred by the Eleventh Amendment to the U.S. Constitution, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Under the Eleventh Amendment, each State is a sovereign entity that is not amenable to lawsuits brought in federal court without its consent. See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996) (citation omitted); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). "The State of New Jersey has not waived its sovereign immunity with respect to 42 U.S.C. § 1983." Logan v. State of New Jersey, No. 09-1528, 2010 WL 572127 (D.N.J. Feb. 17, 2010) (citing Mierzwa v. U.S., 282 Fed. App'x. 973, 976 (3d Cir. 2008) (citation omitted)).

The "general rule" governing the applicability of Eleventh Amendment immunity "is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." Pennhurst, 465 U.S. at 101 (quoting Hawaii v. Gordon, 373 U.S. 57, 58 (1963) (per curiam)). In conducting this analysis, the Supreme Court has held that the type of relief sought by the plaintiff is irrelevant. Id. at 100. Rather, the analysis of whether a suit is considered against the state, and thus barred by sovereign immunity absent consent by the state, is guided by whether the judgment would: (1) be paid out of the state treasury; (2) interfere with government administration; or (3) compel or restrain the state in its actions. Id. at 101, n. 11 (quoting Dugan v. Rank, 372 U.S. 609, 620 (1963)); accord Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir.1989); see also Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 198 (3d Cir. 2008) ("[A] suit may be barred by the Eleventh Amendment even though a State is not named a party to the action, so long as the State is deemed to be the real party in interest.") (citing Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 427 (1997)).

In Fitchik, the Third Circuit noted that it had expanded upon the Supreme Court's language in Pennhurst by enunciating a "more specific and comprehensive" three-factor test to determine whether a government agency or agency employee is an "alter-ego" or "arm of the state," and thus, entitled to sovereign immunity: (1) whether payment of a judgment resulting from the suit would come from the state treasury; (2) the status of the entity under state law; and (3) the entity's degree of autonomy. 873 F.2d at 659 (quoting Urbano v. Board of Managers, 415 F.2d 247 (3d Cir. 1969), cert. denied, 397 U.S. 948 (1970)). These three factors are given "equal consideration, and how heavily each factor ultimately weighs in [the court's] analysis depends on

the facts of the given case." Cooper v. Southeastern Pennsylvania Transportation Authority, 548 F.3d 296, 302 (3d Cir. 2008), cert. denied, 129 S. Ct. 2736 (2009).

In arguing for sovereign immunity, Middlesex Defendants assert that numerous courts within the Third Circuit have found that New Jersey county prosecutors, as well as their office and staff, are entitled to sovereign immunity following the New Jersey Supreme Court's decision in Wright v. State, 778 A.2d 443 (N.J. 2001), wherein that Court held:

> [W]hen county prosecutors and their subordinates are involved in the investigation and enforcement of the State's criminal laws, they perform a function that has traditionally been the responsibility of the State and for which the Attorney General is ultimately answerable. In our view, the State should be obligated to pay the county prosecutors and their subordinates' defense costs and to indemnify them if their alleged misconduct involved the State function of investigation and enforcement of the criminal laws.

Id. at 464 (citing DeLisa v. County of Bergen, 326 N.J. Super. 32, 40, rev'd on other grounds, 165 N.J. 140 (2000)).  In arriving at its decision, the New Jersey Supreme Court relied on Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996), in which the Third Circuit undertook the three-factor test explained in Fitchik, and found that county prosecutors act as agents of the state when they "execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime," but not when they are "called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator."  In the latter scenario, "the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." Id.

Following Wright, courts within the Third Circuit have consistently and uniformly held that the Eleventh Amendment precludes federal suits against New Jersey county prosecutors, as well as their offices and staff, arising out of their law enforcement functions on the basis that the real party in interest in these suits is the State of New Jersey.  See Beightler v. Office of Essex

County Prosecutor, 342 Fed. App'x. 829 (3d Cir. 2009) (defendant entitled to sovereign immunity for action stemming out of decision to prosecute plaintiff for unlawful possession of a firearm), Hyatt v. County of Passaic, No. 08-3206, 2009 WL 2055136 (3d Cir. July 16, 2009) (county prosecutor's office entitled to sovereign immunity on charges of malicious prosecution, false arrest, and false imprisonment claims because procedures, policy, and training implicated in incident were related to the prosecutorial function); Nugent v. County of Hunterdon, No. 09-2710, 2010 U.S. Dist. LEXIS 47654 (D.N.J. May 14, 2010) (noting that while local government units can be sued under § 1983, "under New Jersey law, a county prosecutor's office does not have a separate legal existence . . . [and] [t]herefore, New Jersey courts have consistently held that a county prosecutor's office is not a suable entity under § 1983") (citations omitted); Logan v. New Jersey, No. 09-1528, 2010 U.S. Dist. LEXIS 13479 (D.N.J. Feb. 17, 2010) (JAP) (claims arising from prosecutor's office's decision to unsuccessfully pursue plaintiffs on charges of resisting arrest and inciting a riot); Paez v. Lynch, No. 07-5036, 2009 U.S. Dist. LEXIS 119342 (D.N.J. Dec. 23, 2009) (granting summary judgment for defendant on claims of malicious prosecution under federal and state law); Watkins v. Attorney General of New Jersey, No. 06-1391, 2006 U.S. Dist. LEXIS 73075 (D.N.J. Oct. 4, 2006) (county prosecutor's office entitled to sovereign immunity; also holding that it is not a "person" within the meaning of Section 1983); Banda v. Burlington County, No. 03-2045, 2006 U.S. Dist. LEXIS 68791 (D.N.J. Sept. 26, 2006) ("The Burlington County Prosecutor's Office and the individual prosecutors, in their official capacities only, are entitled to Eleventh Amendment immunity from this suit"); Davis v. Township of Lakewood, No. 03-1025, 2005 U.S. Dist. LEXIS 16420 (D.N.J. Aug. 4, 2005) (holding county prosecutor's office to be an alter-ego of the State for Eleventh Amendment purposes).

Here, the Court finds that the allegations regarding Middlesex Defendants' decisions to charge Plaintiff with various crimes, to consult with witnesses, and to converse with police officers employed by municipalities within Middlesex County, all involve the performance of traditional law enforcement and investigative functions.  In fact, Plaintiff has not alleged any other conduct by these municipal defendants which the Court can construe as non-prosecutorial in nature.  Because the Court finds that the allegations of wrongdoing committed by Middlesex Defendants occurred during their exercise of traditional law enforcement and investigative functions, any judgment rendered in favor of Plaintiff and against Middlesex Defendants would be paid out of the state treasury.  In that regard, Plaintiff's suit is against an arm of the State of New Jersey.

Nevertheless, by relying on Howlett v. Rose, 496 U.S. 356 (1990), Plaintiff contends that Middlesex Defendants are not protected by sovereign immunity.  See Pl.'s Reply to Middlesex Defendants at pp. 1-3.  However, his reliance on Howlett is misplaced.  In Howlett, the Supreme Court found that the State of Florida could not grant local entities, such as a municipality's board of education, sovereign immunity because municipalities are not arms of the state.  Id. at 378 ("Federal law makes governmental defendants that are not arms of the State, such as municipalities, liable for their constitutional violations.").  Unlike in Howlett, here, the State of New Jersey is the real party in interest because it bears the costs of judgments against Middlesex Defendants for activities arising out of functions relating purely to law enforcement for which Plaintiff has identified in his Complaint.  See Wright, 778 A.2d at 464.  Therefore, Howlett is not applicable.

Alternatively, Plaintiff contends that Middlesex Defendants waived their right to sovereign immunity by "interven[ing] in a private right of action by instructing the Old Bridge

Police Department to close the criminal case against [Burgos]." See Pl.'s Reply to Middlesex Defendants at p. 3. Plaintiff's proposition is supported by no authority or explanation, but it appears to be a variant of the argument employed unsuccessfully by the plaintiff in Beightler, 342 Fed. App'x. at 832-33. In Beightler, a plaintiff asserting violations of the Fifth and Fourteenth Amendments argued that a county prosecutor's office had waived its sovereign immunity "by acting maliciously and with willful conduct" in its investigation of him. Id. at 832. The Beightler court found that although malicious or willful conduct on the part of a county prosecutor's office is relevant to determining whether the treasury will be responsible for a judgment under New Jersey state law, such a fact did not change the legal conclusion that "New Jersey county prosecutors are arms of the state when carrying out prosecutorial functions," and thus, are entitled to sovereign immunity. Id. at 833. Hence, even if the facts alleged in Plaintiff's Complaint here rose to the level of malicious conduct on the part of the state defendants – which they do not -- sovereign immunity still attaches because these defendants were carrying out traditional law enforcement and investigatory functions.[6] See Coley v. County of Essex, No. 2:08-4325, 2010 WL 3040039, *2-*3 (D.N.J. Aug 4. 2010).

Accordingly, Middlesex Defendants are entitled to sovereign immunity.

**III. CONCLUSION**

---

[6] Plaintiff's claims against Middlesex Defendants also fail because when prosecutors and their staff act in their official capacity on behalf of the State, they are not considered "persons" under § 1983. See Coleman, 87 F.3d 1491, 1506 (3d Cir. 1996) ("[W]hen county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State."); Banda, 2006 U.S. Dist. LEXIS 68791 at *16-*17. Therefore, Middlesex Defendants are not subject to suit under § 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . As such, it is no different from a suit against the State itself."); see also Briscoe, 460 U.S. at 334.

Based on the foregoing, the Court will grant moving Defendants' motions to dismiss and Plaintiff's claims against them are dismissed. However, this case remains open as to defendant Sayreville Police Department.

An order will be entered consistent with this Opinion.


　　　　　　　　　　　　　　　　　　　　　_____s / Freda L. Wolfson_____
　　　　　　　　　　　　　　　　　　　　　FREDA L. WOLFSON, U.S.D.J

Dated: August 15, 2011